IN BANCO.

THEOPHILUS METCALF *vs.* J. S. M. KAHAI.

Where there appeared a discrepancy between the Hawaiian and English versions of a statute, the court adhered to the former.

The estray law gives the owner of land trespassed upon a lien upon the cattle trespassing, for the amount of damages; and he may either seize and impound them, as pointed out by the statute, or he may let them go, and sue the owner at law.

The owner of the animals may defeat the right of the owner of the land to impound, or make him do so at the risk of paying the costs, by making a tender of a sufficient sum to cover all the damages.

The decision of the Court was rendered by JUDGE ROBERTSON.

This case came up on appeal from the decison of the late Police Justice of Honolulu, Mr. Chamberlain, who gave judgment in favor of the plaintiff, on the 20th of September last, for eighty dollars damages; from which decision the defendant appealed to this court. The case came on for trial at the January term, and after both parties had finished their evidence, it was agreed between them that the case should be submitted to the decision of the court, and the jury discharged.

It appears by the evidence upon record, that the parties to this action are the owners, or occupants, of two adjoining tracts of *kula* land.

cc

a few miles from Honolulu; that on the 15th or 16th of September last, twenty-two head of cattle belonging to the plaintiff, chiefly working oxen in use from day to day, trespassed on the land of the defendant, and were seized by his men, who penned them near defendant's house; that some hours afterwards the plaintiff went with some of his employés to the place where the cattle were penned, and attempted to drive them back to his own land, but was prevented from doing so; that plaintiff then requested defendant's men to release the cattle, but they refused to do so, with the exception of one, a milk cow, unless plaintiff would agree to pay one dollar per head trespass money; that defendant's men kept the cattle there till next morning, which was Monday, when some of them went to plaintiff's place and demanded of him one dollar per head, damages, which plaintiff refused to pay, but said he was willing to pay for the actual damage done by his cattle; that defendant's agent then offered to accept 50 cents per head, but this also was refused by plaintiff, upon which the former notified the latter of his intention to drive the cattle to the government pound, which was done the same day; that the cattle remained in the pound till some time during the following day, when the plaintiff arranged for their release.

The plaintiff alleges that the detention and impounding of his cattle, by the defendant, was wrongful, and has brought this action to recover damages therefor.

The decision of the case depends, chiefly, upon the construction of certain portions of the statutes relating to estrays.

It is provided by section 1, page 53, vol. 1, Statute Laws, as follows, viz: "Any horse, mare, mule, ass, kine, swine, goat, or sheep, found at large in any of the Islands of this kingdom, or doing damage therein to the property of private persons, or to the property of government, or unmarked as in this article prescribed, though not at the time doing damage, shall be denominated an estray, and may be taken up and lodged in the pounds to be established in virtue of this article."

Section 2, of a statute passed subsequently to the above, found at page 72, volume second of the Statute Laws, reads as follows, viz: "That if the animal or animals of any person commit any trespass on any uncultivated ground, the owner of the animal or animals shall forfeit and pay to the owner of the ground, four times the amount of damage done, or of value destroyed." There is a discrepancy in this section between the English and Hawaiian versions. The former provides that the owner of the animals shall pay, *four times the amount of damage done, or of value destroyed;* the latter provides that he shall pay, *a fair and reasonable amount of compensation for the loss and damage sustained.*

The counsel for plaintiff claims that the court should be guided by the provisions of the Hawaiian version. Such, we believe, has been the practice of this court hitherto, in such cases, and we conform to it in this instance.

We think it is clearly proved by the evidence before us, that the plaintiff's cattle were found trespassing upon the land of defendant, and the latter had therefore a right to seize them. The statute gives him a lien upon the cattle for the amount of damages, and if he fulfilled the requirements of the law on his part, and the plaintiff failed

to make satisfaction, the cattle might be sold in order to pay the damages and expenses.

The question is then, did the defendant do all that is required of him by law under the circumstances, before impounding the cattle ? It is provided by section 5, page 54, volume first, Statute Laws, "that the owner of any estray shall not be liable for the payment of any damages occasioned by such estray, nor any expense in impounding the same, unless due notice was given to said owner, if known, and damages demanded of him before impounding."

It is in proof that before the plaintiff's cattle were impounded, due notice was given to him by defendant's agent, who also made demand of damages several times. Counsel for the defendant contends that this is sufficient, and that having shown due notice and demand before impounding, he has made out a complete defence to the action.

The learned counsel for the plaintiff argues that the defendant is bound to show, that the amount of damages demanded by him, was a *reasonable* amount; that in such cases the owner of the land trespassed upon is not at liberty to demand any sum he may think fit, and in default of payment proceed to impound the cattle, and asks the court so to construct the statute.

We think it is consonant with common sense, and with the spirit and tenor of the statute itself, to say that it was not the intention of the legislature, in this enactment, to place it in the power of the owner of the land, on the one hand, to put the owner of the animals, wantonly and unjustly to trouble and inconvenience, and perhaps pecuniary loss, by enabling the former to demand any amount of damages which his cupidity might suggest; nor, on the other hand, to permit the owner of the animals to trespass on the property of his neighbor with impunity, or under the penalty, merely, of such an amount of reparation as his selfishness might dictate.

But, we understood the counsel for the plaintiff, in one part of his argument, to take the ground that, in cases of animals trespassing on *kula* land, as in this instance, the owner of the cattle is liable only under the statute, to pay a reasonable rate of pasturage for them during the time they are trespassing, the only damage or loss sustained by the owner of the land being the grass consumed by the cattle. We regard such a position as utterly untenable. In fact, we think it is perfectly absurd, because the result of such a doctrine is, that every owner of cattle, has a right to pasture those cattle on the land of his neighbor, *ad libitum,* so long as he is willing to pay merely a fair pasturage. It is easy to see what grievous injustice one party would thus be enabled to perpetrate upon the other, under cover of the law. One man might, by overstocking his own land, and thus forcing his cattle to seek their food on the land of his neighbor, completely impoverish that neighbor's own cattle and finally ruin him, while all the redress he could have would simply be a *fair rate of pasturage.* We think the owner of the land trespassed upon by the animals of his neighbor, is entitled to be paid not only the actual value of the grass consumed, or other property destroyed, but also a fair consideration for the loss of his time, and for his trouble about the premises. It would be unjust to compel him to be forever on the *qui vive,* to protect his land from being overrun and his grass consumed, and merely allow him the imperfect satisfaction of the bare value of the property

destroyed. Such meagre satisfaction would not be "*a fair and rea-sonable rate of compensation for the loss and damage sustained.*"

We think, however, that the fair construction of the statute only authorizes the owner of the land to demand reasonable damages, and in cases which are disputed and become the subject of litigation, the reasonableness of the damages demanded will be judged of by the court and jury. We think this construction is borne out by the tenor of the sixth section, on page 54, volume first, which reads as follows, viz: "The governor shall have power to impannel a jury in cases of dispute, to try the question of estray under the meaning of this arti-cle, and the question of damages sustained, upon application for that purpose, and a deposit with him of twenty-five dollars, to be forfeited by the claimant or the party impounding, as the verdict of the jury shall determine."

We think it is evident from the spirit of this provision, that it was the intention of the legislature, as we have said above, to put a check upon both parties. The party whose land has been trespassed upon must confine his demand for damages to a reasonable amount, at his peril; because if the owner of the cattle submits the matter to a jury, under the statutory provision, and they think the owner of the land has made an extortionate demand, he will have to pay the costs, which in a majority of instances, would be a heavy penalty.

It was argued by counsel for the plaintiff that the section we have just quoted became null and void by the enactment of the new judi-ciary Act of 1853. We do not think so. We think it is still in force, but we agree fully with the learned counsel, that parties are not obliged to seek redress in such cases, solely in the mode laid down in this statute, but may resort to the ordinary law courts, as in other matters. This, we understand, is the course pursued in a majority of cases. Counsel argued that in this case defendant ought not to have impounded the cattle, because the owner was well known to him as having abundant means to respond in an action for damages. But the defendant had his option either to impound the cattle, as provided by the statute, or to release them and sue the plaintiff at law. He chose the former course.

It is in evidence that the plaintiff expressed his willingness in gen-eral terms, to pay for all the damage that had been done by his cattle, but he never went so far as to name any particular sum which he was ready to pay, as being reasonable in his opinion. He never made the defendant a tender of any specific amount of money, in satisfac-tion. We think this was indispensable on his part, to enable him to sustain his present action.

We are led to infer from the evidence before us, that the plaintiff's first intention was, to recapture and take back his cattle, by force, without paying any damages; and that having failed in this, he next endeavored to induce the defendant to release the cattle, upon the plaintiff's paying just such a sum as he pleased, for his offer to pay the damages, without naming a specific amount, or proposing to leave it to arbitration, amounted to nothing more than that. We are of opinion that the provision, already quoted from the fifth section, that notice must be given to the owner of the cattle, was enacted for the express purpose of affording him an opportunity to make a tender of damages, and so defeat the other party's right to impound, or at least,

make him do so at his peril. The plaintiff having failed to make a proper tender, we think the defendant had a perfect right to impound the cattle, for he was not obliged to part with his lien by releasing them. He could not thus be compelled to seek redress in an action at law, having the option to proceed, as he did, under the statute.

Had the question of damages been tried by a jury impanneled by the governor, or by the justice of the district without a jury, the burden would have rested on the party owning the land, to show that his demand was reasonable; but this is a different case, here the party owning the cattle alleges that the impounding was illegal, and sues for damages. The defendant having proved that the cattle were taken *damage feasant*, and that the plaintiff had due notice, the latter must show that he tendered the defendant a reasonable amount of compensation, and thereby deprived him of his right to impound.

Let judgment be entered for the defendant, with costs.

Mr. Bates and Mr. Marsh for the plaintiff.

Mr. Harris for the defendant.